IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BODYGUARD PRODUCTIONS,<br><br>                  Plaintiff,<br><br>vs.<br><br>DOES 1-25,<br><br>                  Defendants. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 2:18-cv-00026-TC |

Plaintiff Bodyguard Productions (Bodyguard) filed suit against twenty-five doe Defendants who, it alleges, illegally downloaded and shared the motion picture "The Hitman's Bodyguard" using BitTorrent, a peer-to-peer file-sharing protocol. Bodyguard holds the copyright for the film, and claims infringement under the Copyright Act, 17 U.S.C. § 101 et seq. Having reached settlement agreements with eighteen of the twenty-five Defendants, Bodyguard now moves for the entry of default judgments against the remaining seven, who have ignored their summonses and otherwise failed to participate in the case. For the reasons set forth below, the court grants Bodyguard's motion.

## BACKGROUND FACTS

In an effort to curb unauthorized distribution of the movie "The Hitman's Bodyguard," its copyright holder, Bodyguard Productions, hired an investigative service, Maverickeye UG, to

monitor BitTorrent networks and identify and compile the unique internet protocol (IP) addresses of those who downloaded the film. Anyone who downloads a movie or other file on a BitTorrent network becomes part of a "swarm"—a group of peers who all hold the same file, and from whom others can then download separate pieces of the file.[1] Thus, anyone who downloads a movie contributes, as a matter of course, to its further distribution.

Between September 5, 2017, and September 8, 2017, Maverickeye documented twenty-five instances in which internet users in Utah, identified by their IP addresses, received or transmitted a digital copy of "The Hitman's Bodyguard" through a BitTorrent network. Bodyguard brought this action against twenty-five doe Defendants identified only by their IP addresses, then issued subpoenas to various internet service providers to learn the name and address of each IP address holder. It sent each named Defendant a letter proposing settlement.

Bodyguard reached settlement agreements with eighteen of the Defendants. Seven never responded to the letter or to subsequent summonses: Mohamed Jamal (Doe 3), Andranek Manukyan (Doe 6), Corbin Roper (Doe 13), Alexander Hamilton (Doe 14), Corey Adams (Doe 15), Reda Jamal (Doe 16), and Josh Solt (Doe 20).

The Clerk of Court entered certificates of default against the seven Defendants[2] (the "Defendants in default") pursuant to Federal Rule of Civil Procedure 55(a), and Bodyguard now moves the court for entry of default judgments pursuant to Rule 55(b)(2). In addition,

---

[1] The Honorable Michael E. Hagerty, Magistrate Judge for the District of Colorado, has provided a detailed primer on how the BitTorrent protocol operates. See Dallas Buyers Club, LLC v. Hudson, No. 15-cv-00598-WYD-MEH, 2016 WL 320918, at *1–*2 (D. Colo. Jan. 5, 2016), report and recommendation adopted, No. 15-CV-00598-WYD-MEH, 2016 WL 309075 (D. Colo. Jan. 26, 2016).
[2] Based on the parties' stipulation, the court set aside a certificate of default against an eighth Defendant, Sergio Nevel. (See Sept. 21, 2018 Order, ECF No. 59.)

Bodyguard seeks an award of statutory damages in the amount of $10,000 per Defendant, as well as a permanent injunction barring the Defendants from copying or distributing the film without license.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 55 authorizes the court to enter default judgment against a party who "has failed to plead or otherwise defend" against claims for affirmative relief. Fed. R. Civ. P. 55(a). It sets forth a two-step process. First, the clerk of court "must enter the party's default" under Rule 55(a). Second, a party may move the court (or, in certain circumstances, the clerk) for entry of default judgment under Rule 55(b).

"[T]he entry of a default judgment is committed to the sound discretion of the district court." Tripodi v. Welch, 810 F.3d 761, 764 (10th Cir. 2016). Default judgments are generally disfavored, as "[t]he preferred disposition of any case is upon the merits." Gomes v. Williams, 420 F.2d 1364, 1366 (10th Cir. 1970). But "a workable system of justice requires that litigants not be free to appear at their pleasure." Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d 1442, 1444 (10th Cir. 1983). Parties must be held "to a reasonably high standard of diligence in observing the courts' rules of procedure[,]" and "[t]he threat of judgment by default serves as an incentive to meet this standard." Id. at 1444–45.

Default judgment "must be supported by a sufficient basis in the pleadings." Tripodi, 810 F.3d at 765. After the clerk has entered default, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action." Bixler v. Foster, 596 F.3d 751, 762 (10th Cir. 2010) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2688, at 63 (3d ed. 1998)); see Fed. R. Civ. P. 8(b)(6) ("An

allegation . . . is admitted if a responsive pleading is required and the allegation is not denied."). The court must first assure itself of personal and subject matter jurisdiction. Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986). It must then determine whether the plaintiff's complaint contains sufficient factual matter, accepted as true, to state a claim for relief. Stampin' Up!, Inc. v. Hurst, No. 2:16-cv-00886-CW, 2018 WL 2018066, at *4 (D. Utah May 1, 2018). The court may also look to declarations and other exhibits when evaluating a plaintiff's claims. See, e.g., Major Bob Music v. S. Shore Sports Bar & Grill, Inc., No. 2:08-cv-689-DB, 2010 WL 2653330, at *1 (D. Utah June 30, 2010).

## JURISDICTION

The court has personal jurisdiction over all seven Defendants in default. Each was properly served with a summons and copy of the complaint at their residence in Utah (see Proof of Serv., ECF No. 43), which establishes personal jurisdiction. Fed. R. Civ. P. 4(k)(1)(A). The court also has subject matter jurisdiction over this case because it arises under an "Act of Congress relating to . . . copyrights." 28 U.S.C. § 1338(a).

## ANALYSIS

A copyright infringement claim has two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Blehm v. Jacobs, 702 F.3d 1193, 1199 (10th Cir. 2012) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). Along with its complaint, Bodyguard submitted a copy of its certificate of registration of the copyright for "The Hitman's Bodyguard," (ECF No. 2-1), which satisfies the first element.

The copying element has two subparts. "First, a plaintiff must demonstrate that the defendant copied the plaintiff's work 'as a factual matter.'" Id. (quoting Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823, 832 (10th Cir. 1993)). "Second, the plaintiff must establish 'substantial similarity' between the allegedly infringing work and the elements of the copyrighted work that are legally protected." Id. (quoting Jacobsen v. Deseret Book Co., 287 F.3d 936, 942 (10th Cir.2002)).

The court finds that Bodyguard has pled sufficient facts showing that the Defendants in default copied Bodyguard's copyrighted film. When a file (such as a digital copy of a film) is uploaded to a BitTorrent network, it is assigned a unique string of numbers and letters known as a "hash ID." (Compl. ¶ 22, ECF No. 2.) "The unique hash ID accompanies a copy of the file or parts thereof whenever a copy is made or sent to another" over the network. (Id.)

Bodyguard's investigator used forensic software to scan BitTorrent networks for instances when users would download or share pieces of the file comprising a digital copy of "The Hitman's Bodyguard." (Id. ¶¶ 21–23.) The forensic software then connected to the users' computers and downloaded the file pieces bearing the hash ID of the movie file. (Id. ¶ 24; see Decl. of Daniel Arheidt ¶ 6, ECF No. 4.) The investigator was thereby able to compile the date and time BitTorrent users shared the film files from certain IP addresses, and verify that the film files matched the film itself. (Compl. ¶¶ 13, 23–24; Arheidt Decl. ¶¶ 4–6; see Compl. Ex. 2, ECF No. 2-2.) These facts, taken as true, allow the court to draw the reasonable inference that

5

each IP address holder downloaded, possessed, and shared at least part of the film without authorization, and so directly infringed on Bodyguard's copyright.[3]

Of course, the Defendants here, named because they hold the infringing IP addresses, may not have downloaded the film themselves.

> Internet providers . . . can go so far as to identify the individual who is registered to a particular IP address (i.e., an account holder) and the physical address associated with the account, but that connection does not mean that the internet subscriber is also the infringer. The reasons are obvious—simply establishing an account does not mean the subscriber is even accessing the internet, and multiple devices can access the internet under the same IP address.

Cobbler Nevada, LLC v. Gonzales, 901 F.3d 1142, 1146 (9th Cir. 2018).

Because of this, courts are split on whether allegations against defendants named solely on the basis of an infringing IP address are sufficient to state a claim of direct infringement. See generally PTG Nev., LLC v. Chan, No. 16 C 1621, 2017 WL 168188, at *1 (N.D. Ill. Jan. 17, 2017) (surveying cases). The Ninth Circuit recently affirmed a district court's dismissal of an infringement claim against an IP address holder who operated an adult foster care home and shared his internet service with its residents and visitors. The court held that the defendant's "status as the registered subscriber of an infringing IP address, standing alone, does not create a reasonable inference that he is also the infringer." Cobbler Nevada, 901 F.3d at 1145.

But the District of Colorado faced the same argument and reached a different conclusion. In Malibu Media, LLC v. Butler, the court found that allegations of infringement associated with

---

[3] In its Complaint, Bodyguard alleges indirect and contributory infringement claims as alternatives to its direct infringement claims. (Compl. ¶¶ 44, 46.) But Bodyguard has not raised these alternate theories as grounds for default judgment, so the court will not address them here.

6

an IP address stated a plausible claim for relief against the named registrant of the IP address. No. 13-cv-02707-WYD-MEH, 2014 WL 3272500, at *8 (D. Colo. July 8, 2014). The court denied the registrant's motion to dismiss for failure to state a claim, noting that "whether [the registrant] <u>actually</u> performed the alleged conduct . . . is a matter for summary judgment or trial, as appropriate." <u>Id.</u>; <u>see also</u> <u>Countryman Nev., LLC v. Pitts</u>, No. 6:14-cv-493-Orl-40GJK, 2014 WL 7178077, at *2 (M.D. Fla. Dec. 16, 2014) (finding that allegations of infringement against a defendant identified solely by IP address were sufficient at the pleading stage, and further noting that "[i]t is for the parties to flesh out through discovery whether these allegations hold weight").

Even considering the possibility that the Defendants in default may not have infringed themselves, the court finds default judgment appropriate. The decision to grant default judgment depends on the sufficiency of the pleading, not the merits of the claim. Bodyguard has established plausible infringement claims against each Defendant in default "in that a computer using an IP address assigned to [them] participated in an illegal download" of Bodyguard's copyrighted film. <u>Dallas Buyers Club</u>, 2016 WL 320918, at *5. While the Defendants may not have download the film themselves, they have forfeited their ability to prove that fact. <u>Tripodi</u>, 810 F.3d at 764 (by failing to appear, "a defendant admits to a complaint's well-pleaded facts and forfeits his or her ability to contest those facts").

**RELIEF**

Having found that Bodyguard has sufficiently alleged direct infringement claims against the Defendants in default, the court must now decide the appropriate relief. Bodyguard seeks statutory damages in the amount of $10,000 and a permanent injunction prohibiting further infringement of the copyrighted film.

7

**Statutory Damages**

The Copyright Act authorizes the court to award statutory damages against each Defendant "in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). If the infringement is "willful," the court may increase the award to $150,000. Id. § 504(c)(2). "The court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." Major Bob Music, 2010 WL 2653330, at *3 (quoting Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir.1984)).

The Copyright Act's statutory award provisions serve largely as a deterrent. "Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy" of discouraging infringement. F. W. Woolworth Co. v. Contemporary Arts, 344 U.S. 228, 233 (1952); see also ME2 Prods., Inc. v. Pumaras, No. CV 17-00078 SOM/RLP, 2017 WL 4707015, at *3 (D. Haw. Oct. 19, 2017) (recognizing that Congress "authorized statutory damages to compensate copyright holders for difficult-to-prove downstream losses and to deter future infringement").

The court finds that Bodyguard has shown willful infringement. "[A]n infringement is 'willful' if the defendant had knowledge that its actions constitute an infringement." N.A.S. Imp., Corp. v. Chenson Enters., Inc., 968 F.2d 250, 252 (2d Cir. 1992) (internal quotation omitted). Willfulness "need not be proven directly but may be inferred from the defendant's conduct." Id.

"The Hitman's Bodyguard," a feature film, "is easily discernible as a professional work" subject to copyright. (Compl. ¶ 11.) And to download the film using BitTorrent, the Defendants

in default first needed to download and install a BitTorrent program. (Id. ¶ 30.) The Defendants thus took deliberate steps to procure the movie in violation of Bodyguard's copyright.

Still, the Defendants' infringements do not warrant a $10,000 penalty. "Copyright violations come in all shapes and sizes, from the unauthorized copying of a Halloween word puzzle for a child's party to the unauthorized manufacture and sale of hundreds of thousands of bootleg copies of an album." Qotd Film Inv. Ltd. v. Starr, No. C16-0371RSL, 2016 WL 5817027, at *3 (W.D. Wash. Oct. 5, 2016). Downloading a film to view privately "is a relatively minor infraction causing relatively minor injury." Id. Accordingly, the court finds that a statutory award of $1,500 against each Defendant in default is sufficient to compensate Bodyguard and deter future infringements.

**Injunctive Relief**

The Copyright Act also provides that "[a]ny court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms at it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Bodyguard seeks injunctive relief prohibiting the Defendants in default "from directly or indirectly infringing on Plaintiff's rights as to the Plaintiff's motion picture, including without limitation using the Internet to reproduce, to distribute, to copy, or to publish the motion picture." (Pl.'s Mot. Default J. 13, ECF No. 60.) The court finds Bodyguard's request to be reasonable, and appropriately tailored to prevent further infringement of the film.

## ORDER

For the foregoing reasons,

1. Plaintiff's Motion for Default Judgment (ECF No. 60) is GRANTED;

2. Plaintiff is awarded default judgment against Defendant Mohammed Jamal in the amount of $1,500;

3. Plaintiff is awarded default judgment against Defendant Andranek Manukyan in the amount of $1,500;

4. Plaintiff is awarded default judgment against Defendant Corbin Roper in the amount of $1,500;

5. Plaintiff is awarded default judgment against Defendant Alexander Hamilton in the amount of $1,500;

6. Plaintiff is awarded default judgment against Defendant Corey Adams in the amount of $1,500;

7. Plaintiff is awarded default judgment against Defendant Reda Jamal in the amount of $1,500;

8. Plaintiff is awarded default judgment against Defendant Josh Solt in the amount of $1,500; and

9. All seven Defendants listed above are hereby permanently ENJOINED from further infringement of the copyrighted film "The Hitman's Bodyguard."

DATED this 8th day of November, 2018.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge